UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SUSAN CARRILLO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 13-0416 (ESH) |
| ) | |
| OSCAR CARRILLO, *et al*. ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Plaintiff Susan Carrillo, proceeding *pro se*, has filed suit against defendants Oscar Carrillo, her former husband, and Dr. Alice Dvoskin, alleging injuries relating to a child custody dispute between the Carrillos in which Dr. Dvoskin served as a court-appointed expert. (*See* Compl., Apr. 3, 2013 [ECF No. 1].) The Court will grant defendants' motions to dismiss[1] because plaintiff has not established personal jurisdiction over Dr. Dvoskin, and because the doctrine of collateral estoppel bars plaintiff's claims against both defendants.

## BACKGROUND

On December 5, 2012, Susan and Oscar Carrillo appeared before Judge Anne K. Albright in the Circuit Court for Montgomery County, Maryland, for a Modification of Custody Hearing. (*See* Compl., Ex. 3 (Tr. of 12/5/2012 Custody Modification Hrg.), at 2-74 ("Tr.") .) Prior to the hearing, Judge Albright had appointed Dr. Dvoskin to complete a custody evaluation and submit her findings to the court for the purposes of the hearing. (Dvoskin Mot. at 2.) Dr. Dvoskin, after

---

[1] *See* Dvoskin Mot. to Dismiss, May 7, 2013 [ECF No. 8] ("Dvoskin Mot."); Carrillo Mot. to Dismiss, Apr. 25, 2013 [ECF No. 4] ("Carrillo Mot.").

conducting several interviews with and psychological tests of both Carrillos, interviewing their children, and speaking with several individuals familiar with the children, concluded that until plaintiff's "psychiatric condition is addressed and her behavior normalized, her access to the boys must be restricted." (Dvoskin Reply, Ex. B. ("Custody "Eval."), at 16, Jul. 18, 2013 [ECF No. 18-2]; *see generally id.* at 1-17.)

Susan Carrillo filed two motions prior to the hearing in Montgomery County Circuit Court challenging Dr. Dvoskin's evaluation, one on the ground that Dr. Dvoskin's report and testimony was inadmissible under the Maryland Rules of Evidence, and the other alleging that Dr. Dvoskin "had been bias [sic] in favor of [Oscar Carrillo], had been negligent in her conduct of the evaluation, and had not abided by court ordered stipulations." (*See* Compl. at 14-15.) Judge Albright denied both motions. (Dvoskin Mot. at 3.) At the hearing, despite Susan Carrillo's objections to Dr. Dvoskin's report and testimony, Judge Albright accepted them both, finding that Dr. Dvoskin's opinion was well-supported, consistent with the other evidence in the case, and credible. (*See* Tr. at 7-12, 60.) Based on Dr. Dvoskin's opinion and the rest of the evidence in the record, Judge Albright found that Susan Carrillo's mental health treatment regimen had been ineffective. (*Id.* at 45.) She ordered that it would be in the best interests of the two children for Oscar Carrillo to continue to have sole legal and physical custody, *id.* at 45, 71, but that Susan Carillo be allowed supervised visitation with her children. (*Id.* at 60.) The Court of Special Appeals of Maryland upheld the Circuit Court's decision on June 6, 2013, finding that the court did not err in accepting Dr. Dvoskin as a credible witness, and that Ms. Carrillo's challenges to the decision lacked merit. (Dvoskin Reply, Ex. C (Md. Appellate Court Decision), at 9-10 ("App. Ct. Decision").)

Susan Carrillo filed the above case on April 3, 2013. She alleges that Dr. Dvoskin has

committed medical malpractice or caused personal injury to plaintiff and that Oscar Carrillo has caused personal injury to plaintiff and committed civil rights violations. (Pl.'s Opp. to Dvoskin Mot. at 2, July 10, 2013 [ECF No. 16]; Pl.'s Opp. to Carrillo's Mot. at 25, Jul. 15 2013 [ECF No. 17]). Before the Court are Oscar Carrillo's *pro se* motion to dismiss, Dr. Dvoskin's motion to dismiss, and Oscar Carrillo's motion to join Dr. Dvoskin's motion.

## ANALYSIS

### I. PERSONAL JURISDICTION

Dr. Dvoskin seeks to dismiss the claims against her pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. A plaintiff bears the burden of establishing a factual basis for personal jurisdiction over a defendant. *Rossmann v. Chase Home Finance, LLC*, 772 F. Supp. 2d 169, 171 (D.D.C. 2011) (citing *Crane v. N.Y. Zoological Society*, 894 F.2d 454, 456 (D.C. Cir. 1990)). The Court need not treat all of a plaintiff's allegations as true when determining whether personal jurisdiction exists. Instead, the Court "may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts." *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1351 (1990)). Any factual discrepancies with regard to the existence of personal jurisdiction should be resolved in plaintiff's favor. *See Crane*, 894 F.2d at 456.

The Court has set forth a two-part inquiry for establishing personal jurisdiction over a nonresident defendant. *GTE New Media Servs. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). First, a court must "examine whether jurisdiction is applicable under the state's long-arm statute," and second, "determine whether a finding of jurisdiction satisfies the constitutional requirements of due process." *Id.* The applicable long-arm statute states in relevant part:

> (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—
>
> > (1) transacting any business in the District of Columbia;
> >
> > (2) contracting to supply services in the District of Columbia;
> >
> > (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
> >
> > (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia[.]

D.C. Code § 13–423(a). Where jurisdiction is predicated solely upon the long-arm statute, "only a claim for relief arising from acts enumerated in this section may be asserted against [a defendant]." D.C. Code § 13–423(b).

Susan Carrillo argues that this Court may exercise personal jurisdiction over Dr. Dvoskin because Carrillo contracted with Dr. Dvoskin for medical services, and that Dr. Dvoskin was therefore "obligated to the Plaintiff, a resident of the District of Columbia, to supply medical services and Dr. Dvoskin also caused tortious injury to the Plaintiff . . . Dr. Dvoskin agreed to the stipulations of the Circuit Court June 4, 2012 Interim Consent Order Agreement, and a home visit to the Plaintiff's residence in the District of Columbia." (Pl.'s Opp. to Dvoskin Mot. at 7.)

However, plaintiff did not contract with Dr. Dvoskin for medical services. On the contrary, Dr. Dvoskin was appointed by the Maryland court, and "the parties were ordered and agreed to cooperate with the access evaluation to the extent necessary to complete . . . the access evaluation as directed by the evaluator." (Tr. at 34.) The Circuit Court order that plaintiff refers to states that the "access evaluator . . . shall *be able to* . . . visit the parent's homes." (*Id.* at 81 (emphasis added).) Therefore, the notion that Dr. Dvoskin was obligated to perform services at

4

the plaintiff's residence in the District of Columbia is incorrect.  Indeed, Dr. Dvoskin never visited Susan Carrillo's home in the District of Columbia to conduct an interview.  Because there was no contract to supply medical services, and because all of the actions of Dr. Dvoskin took place outside of the District of Columbia, plaintiff has failed to meet her burden to establish personal jurisdiction over Dr. Dvoskin.

## II.     COLLATERAL ESTOPPEL

Dr. Dvoskin and Oscar Carrillo also seek dismissal on the ground that Susan Carrillo's claims are barred by the doctrine of collateral estoppel.  Collateral estoppel, also known as issue preclusion, bars the relitigation of specific issues actually litigated in a prior action.  *United Book Press, Inc. v. Maryland Composition Co., Inc.*, 786 A.2d 1, 10 (Md. App. 2001).  A federal court must accept the rules followed by the State where the judgment was issued in assessing a claim of collateral estoppel.  *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 481–82 (1982); *see also Casco Marina Dev., LLC v. M/V Forrestall*, 384 F. Supp. 2d 154, 158 (D.D.C. 2005).  In this case, the judgment on which defendant relies is from Maryland.  In Maryland, to successfully invoke collateral estoppel, a party must establish that:

> (1) the issue sought to be precluded is identical to one previously litigated; (2) the issue must have been actually determined in the prior proceeding; (3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment must be final and valid; and (5) the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum.

*Campbell v. Lake Hallowell Homeowners Ass'n*, 852 A.2d 1029, 1037–38 (Md. App. 2004). Collateral estoppel is not limited to subsequent actions involving the same parties.  "Defensive use of nonmutual collateral estoppel occurs when a defendant seeks to prevent a plaintiff from relitigating an issue which the plaintiff previously litigated unsuccessfully in another action

against a different party." *Leeds Fed. Savs. & Loan Ass'n v. Metcalf*, 630 A.2d 245, 249 n.4 (Md. App. 1993).

Plaintiff asserts that the claim brought against Dr. Dvoskin involves a new issue, namely "medical malpractice" or "personal injury." (Pl.'s Opp. to Dvoskin Mot. at 2.) However, labeling Dr. Dvoskin's actions as "medical care" misrepresents what in fact took place: a custody evaluation. (Tr. at 67.) Dr. Dvoskin helpfully summarizes the substance of plaintiff's allegations as follows: (1) Dr. Dvoskin was not qualified to offer an expert opinion in the prior action; (2) Dr. Dvoskin did not abide by the trial court's orders in conducting her evaluation or in submitting her report; (3) Dr. Dvoskin conspired to deny plaintiff due process and to interfere with court orders; and (4) Dr. Dvoskin discriminated against plaintiff due to her medical disability. (Dvoskin Mot. at 6.) Plaintiff raised each of these issues in the Maryland custody proceeding (Compl. at 14-19; Tr. at 1-72), and these issued were determined by Judge Albright when she denied plaintiff's two motions to strike Dr. Dvoskin's testimony and report, and when she rejected plaintiff's challenge to Dr. Dvoskin's testimony at the hearing. (*See* Compl. at 14-19.) This determination was a critical and necessary part of the proceeding, as the judge made her custody determination "based on how overwhelming [Dr. Dvoskin's report] was and how comprehensive it was and how based on the fact that it was a custody evaluation that Ms. Carrillo agreed to have happen." (Tr. at 68.) The Court of Special Appeals of Maryland upheld the Circuit Court's decision and specifically found that that the trial judge did not err in accepting Dr. Dvoskin as a credible witness. (App. Ct. Decision at 9-10.) Since the Maryland judgment was final and plaintiff had a fair and full opportunity to litigate the issues, this suit against Dr. Dvoskin is barred by the doctrine of collateral estoppel.

Plaintiff's claims against Oscar Carrillo are also barred for the same reason.[2] Susan Carrillo seeks to bring a personal injury claim against Oscar Carrillo based on her allegation that he "harassed and maliciously prosecuted the Plaintiff to illegally obtain sole legal and physical custody of the minor children [and] the Plaintiff and minor children have been irreparably harmed due to the loss of a good, nurturing parent-child relationship with the Plaintiff." (Pl.'s Opp. to Carrillo's Mot. at 2.) Susan Carrillo additionally argues that there was not a final judgment on the merits of these issues, as Judge Albright "stopped [Susan Carrillo] from testifying regarding [Oscar Carrillo's] malicious prosecution, harassment, or discrimination against [Susan Carrillo]." (*Id.* at 25.) Although Susan Carrillo labels her claim as one for personal injury, the substance of her claim against Oscar Carrillo relates to and arises from the child custody determination made by Judge Albright. (*See id.* at 2-11.) These issues have already been litigated in the Circuit Court of Montgomery County. (*See id.* at 25; Tr. at 1-72.) That Court considered an extensive record before making its custody determination, a final and valid judgment, which was reviewed and upheld by the Court of Special Appeals, was entered, and plaintiff had a full opportunity to litigate these issues in Maryland. Thus, plaintiff cannot raise this issue again in this Court.

---

[2] It is well established that pleadings filed by *pro se* litigants are liberally construed, and are held to less stringent standards than are applied to pleadings prepared by attorneys. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Moore v. Agency for Int'l Dev.*, 994 F.2d 874, 877 (D.C. Cir. 1993) (allowing pro se litigants "more latitude than litigants represented by counsel to correct defects in service of process and pleadings"). Oscar Carrillo does not specifically assert the defense of collateral estoppel, but instead states that plaintiff's claims "have been investigated . . . by the District and Circuit Courts for Montgomery County . . . and have proven to be unfounded." (Carillo Mot. at 3.) Applying the above standard to Oscar Carrillo's motion to join Dr. Dvoskin's motion to dismiss, the Court concludes that he has adequately raised the defense of collateral estoppel.

## CONCLUSION

Because the Court concludes that plaintiff has not established personal jurisdiction over Dr. Dvoskin, and because collateral estoppel precludes plaintiff's substantive claims against both defendants, defendants' motions to dismiss will be granted. A separate Order accompanies this Memorandum Opinion.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

DATE:  July 25, 2013